Opinion
 

 CHIN, J.
 

 Under California’s Determinate Sentencing Act (DSA), when a court imposes consecutive prison terms for two or more determinate counts, one term becomes the principal term, and the rest are subordinate terms. The court may also impose sentence enhancements for any of the counts for conduct such as using a firearm while committing the crime. Generally, the court imposes the full enhancement for the principal term but only one-third of the enhancement for a subordinate term for a violent felony. In this case, the court imposed a life sentence for premeditated attempted murder, consecutively to a sentence for first degree murder. It also imposed full firearm-use enhancements for both crimes. The full enhancement was clearly proper for the murder charge. The issue here is whether the court correctly imposed the full term for the enhancement for the attempted murder or should instead have imposed only one-third of that term.
 

 We conclude that the court correctly imposed full enhancements for both the murder and the attempted murder counts. Accordingly, we reverse the judgment of the Court of Appeal.
 

 
 *654
 
 I. Facts and Procedural History
 

 On August 2, 1996, defendant fired several shots into a van, killing one person and wounding two others. A jury convicted him of first degree murder and two counts of premeditated attempted murder. It also found he had personally used a firearm in committing each crime. The court sentenced defendant to state prison for 25 years to life for the murder, plus a 10-year enhancement for the firearm use. It also sentenced him to prison for life plus another 10-year firearm-use enhancement for each of the attempted murders, to run concurrently with each other but consecutively to the murder term. The Court of Appeal ordered the trial court to impose only one-third of the firearm enhancement for the attempted murders, modified the judgment as to custody credits, and otherwise affirmed the judgment.
 

 We granted the Attorney General’s petition to review whether the firearm-use enhancement for the attempted murders should be the full term or one-third of the term.
 

 II. Discussion
 

 A.
 
 How Enhancements Apply to Indeterminate Terms
 

 “Before July 1, 1977, California law provided for indeterminate sentencing. Under that sentencing scheme, penal statutes specified a minimum and a maximum sentence for felonies, often ranging broadly from as little as one year in prison to imprisonment for life. [Citation.] . . . [T]he actual length of a defendant’s term, within the statutory maximum and minimum, was determined by the Adult Authority.”
 
 (People
 
 v.
 
 Jefferson
 
 (1999) 21 Cal.4th 86, 94 [86 Cal.Rptr.2d 893, 980 P.2d 441].) “On July 1, 1977, the Legislature replaced California’s indeterminate sentencing scheme with a new law, the Determinate Sentencing Act. Under the new law, most felonies specify three possible terms of imprisonment (the lower, middle, and upper terms); ... the trial court selects one of these terms. ([Pen. Code,] § 1170, subd. (b).)”
 
 (Id.
 
 at p. 95.) These terms are generally referred to as “determinate sentences.” (Pen. Code, § 1170, subd. (a)(1);
 
 [1]
 
 see
 
 People v. Jefferson, supra,
 
 21 Cal.4th at p. 92.) Some crimes, however, remain punishable by imprisonment for either some number of years to life, or simply “life.”
 
 (People v. Jefferson, supra,
 
 21 Cal.4th at pp. 92-93 & fn. 2.)
 

 Thus, two different sentencing schemes coexist today: one determinate, the other indeterminate. “Every person who commits a public offense, for which any specification of three time periods of imprisonment in any
 
 *655
 
 state prison is now prescribed by law or for which only a single term of imprisonment in state prison is specified,” i.e., for any determinate term, “shall... be sentenced pursuant to” the DSA, section 1170 et seq. (§ 1168, subd. (a) [determinate sentencing].) “For any person not sentenced under such provision, but who is sentenced to be imprisoned in the state prison, including imprisonment not exceeding one year and one day, the court imposing the sentence shall not fix the term or duration of the period of imprisonment.” (§ 1168, subd. (b) [indeterminate sentencing].)
 

 Under the DSA, if a defendant is convicted of more than one offense carrying a determinate term, and the trial court imposes consecutive sentences, the term with the longest sentence is the “principal term”; any term consecutive to the principal term is a “subordinate term.” (§ 1170.1, subd. (a).) The court imposes the full term, either lower, middle, or upper, for the principal term. However, in general (there are exceptions), the court imposes only “one-third of the middle term” for subordinate terms.
 
 (Ibid.) A
 
 determinate term for a given offense might also be lengthened by sentence enhancements. Typical is the enhancement imposed in this case for firearm use. Section 12022.5, subdivision (a)(1), provides that “any person who personally uses a firearm” while committing the offense shall receive an additional term of “3, 4, or 10 years.” The full term for the enhancement is added to the principal term. Enhancements are excluded from subordinate terms for felonies not defined as “violent” under section 667.5, subdivision (c). Enhancements are added to subordinate terms for “violent” felonies, but they can be only “one-third of the term.” (§ 1170.1, subd. (a); see also § 1170.11.)
 
 [2]
 

 In any given case, an overall sentence might include both determinate terms and indeterminate terms. Whenever a person is convicted of two or more crimes, the court must impose either concurrent or consecutive sentences. (§ 669.) As section 669 currently reads, “Life sentences, whether with or without the possibility of parole, may be imposed to run consecutively with one another, with any term imposed for applicable enhancements, or with any other term of imprisonment for a felony conviction. Whenever a person is committed to prison on a life sentence which is ordered to run consecutive to any determinate term of imprisonment, the determinate term of imprisonment shall be served first. . . .” (Stats. 1997, ch. 750, § 1.)
 
 [3]
 

 Even though enhancements such as that for section 12022.5 are themselves determinate, i.e., for a specified number 'oL-years, they may be
 
 *656
 
 attached to indeterminate as well as determinate terms. Section 669 makes this clear, as do the applicable enhancements themselves. (E.g., § 12022.5, subd. (a)(1) [applying whenever a person uses a firearm in the commission or attempted commission of a felony].) If an enhancement is attached to more than one indeterminate term, the first enhancement clearly would be for its full term. No reason appears for it to be less than full term. But this observation gives rise to the question here. If enhancements are attached to two or more consecutive indeterminate terms, are the second and subsequent enhancements full term or, as would be the case with determinate sentences, only one-third of the term?
 

 The court confronted this question in
 
 People v. Jackson
 
 (1993) 14 Cal.App.4th 1818 [18 Cal.Rptr.2d 586]. The
 
 Jackson
 
 court upheld two “ ‘full strength’ consecutive sentences for” gun use enhancements “attached to indeterminate terms imposed under section 1168.”
 
 (Id.
 
 at p. 1832.) “Because they are attached to indeterminate terms, the gun-use enhancements are not subject to the determinate sentencing law, including the provisions of section 1170.1. ”
 
 (Ibid.)
 
 We agree with this holding. Section 1170.1, subdivision (a), itself provides that its consecutive sentence provisions, including the portions concerning one-third terms, apply to consecutive terms “imposed under Sections 669
 
 and
 
 1170.” (Italics added.) “ ‘Thus, it must follow that section 1170.1, subdivision (a), cannot apply to consecutive terms imposed under sections 669
 
 and
 
 1168, the case here.’”
 
 (People v. Jackson, supra,
 
 14 Cal.App.4th at p. 1833, quoting
 
 People v. McGahuey
 
 (1981) 121 Cal.App.3d 524, 531-532 [175 Cal.Rptr. 479].) For these reasons, like the
 
 Jackson
 
 court, “we find that section 1170.1 does not apply to a gun-use enhancement attached to an offense which carries an indeterminate term of imprisonment.”
 
 (People v. Jackson, supra,
 
 14 Cal.App.4th at p. 1833.) That being the case, section 1170.l’s one-third limit for consecutive subordinate terms and enhancements does not apply.
 

 We thus conclude that the court should impose the full term for enhancements attached to indeterminate terms. This conclusion means that consecutive enhancements are full term for indeterminate crimes, one-third the term for “violent” determinate crimes, and not imposed at all for nonviolent determinate crimes. (See § 1170.1, subd. (a).) This pattern is consistent with legislative policy to punish more serious crimes more severely. With the
 
 *657
 
 adoption of the DSA, indeterminate sentences are generally reserved for more serious crimes than those subject to determinate sentences. (See, e.g.,
 
 People
 
 v.
 
 Yates
 
 (1983) 34 Cal.3d 644, 649-650 [194 Cal.Rptr. 765, 669 P.2d 1].)
 

 B.
 
 Whether a “Life” Term Is Determinate or Indeterminate Under the DSA
 

 The punishment for first degree murder without special circumstances is a prison term for “25 years to life.” (§ 190, subd. (a).) The punishment for attempted premeditated murder is a prison term “for life with the possibility of parole.” (§ 664, subd. (a).) Defendant argues, and the Court of Appeal held, that while the 25-year-to-life term for murder is indeterminate, the “straight life” term for attempted murder is determinate, and thus is subject to section 1170.1’s one-third limit for consecutive enhancements.
 

 Our own terminology has been inconsistent. The Court of Appeal cited
 
 People
 
 v.
 
 Yates, supra,
 
 34 Cal.3d 644, and
 
 People
 
 v.
 
 Smith
 
 (1984) 35 Cal.3d 798, 808-809 [201 Cal.Rptr. 311, 678 P.2d 886], both of which repeatedly describe a life term as “determinate.” (See also
 
 In re Jeanice D.
 
 (1980) 28 Cal.3d 210, 214-221 [168 Cal.Rptr. 455, 617 P.2d 1087] [implying that a life sentence is determinate in contrast to a sentence of 25 years to life, which is indeterminate].) More recently, we have described life sentences as “indeterminate.”
 
 (Dix v. Superior Court
 
 (1991) 53 Cal.3d 442, 462, fn. 14 [279 Cal.Rptr. 834, 807 P.2d 1063]; see also
 
 People v. Bright
 
 (1996) 12 Cal.4th 652, 673 [49 Cal.Rptr.2d 732, 909 P.2d 1354] (dis. opn. of Mosk, J.).) Most recently, we noted that “attempted premeditated murder is punishable by life imprisonment with the possibility of parole, which both parties agree is an indeterminate prison term.”
 
 (People v. Jefferson, supra,
 
 21 Cal.4th at p. 90.) Accordingly, we described a straight life term as indeterminate but, because the parties agreed with this designation, we did not discuss the question further.
 
 (Id.
 
 at pp. 92-93, 95; see also
 
 id.
 
 at p. 104 (dis. opn. of Werdegar, J.).) Defendant argues that he does
 
 not
 
 agree that life is an indeterminate term, and that
 
 People v. Yates, supra,
 
 34 Cal.3d 644, and
 
 People v. Smith, supra,
 
 35 Cal.4th 798, were correct.
 

 We must focus here on the precise question whether a straight life term is subject to the requirements of section 1170.1, i.e., whether it is a determinate term
 
 within the meaning of the DSA. Yates
 
 and
 
 Smith
 
 did not interpret the DSA; indeed, neither case involved sentencing. Both cases faced essentially the same question. Former section 1070 (now Code Civ. Proc., § 231) gave the defense and prosecution more peremptory challenges to prospective jurors when the charged offense was punishable with death or “imprisonment in the state prison for life” than for other crimes. Long before the DSA,
 
 *658
 
 we interpreted this provision as applying only to straight life terms and not to the then prevalent indeterminate terms of some number of years to life. (See
 
 People v. Yates, supra,
 
 34 Cal.3d at pp. 647-648.) Until 1978, murder was punishable by life, and therefore defendants charged with murder received the larger number of peremptory challenges. In 1978, the punishment for first degree murder without special circumstances was changed to prison for “25 years to life,” and that for second degree murder to prison for “15 years to life.” (§ 190, subd. (a).) The question in
 
 Yates
 
 was whether this change meant that persons charged with first degree murder would receive fewer challenges. We concluded the change in the punishment did not change the number of available challenges.
 
 (People v. Yates, supra,
 
 34 Cal.3d at p. 653.)
 
 People v. Smith, supra,
 
 35 Cal.3d at pages 808-809, extended
 
 Yates
 
 to defendants charged with second degree murder.
 

 Our analysis in
 
 Yates
 
 and
 
 Smith
 
 merely used the words “indeterminate” and “determinate” as a convenient means of distinguishing between the two types of sentences that prevailed before the DSA took effect in 1977: straight life sentences and sentences of some number of years to life. It was not necessary to use those words; the analysis would have been the same without them. When the universe of sentences was limited to these two types, this distinguishing terminology was understandable. A sentence of some number of years to life was certainly more clearly indeterminate than one of life alone, which had a specific, readily determinable event as its measure. The terminology was thus understandable but, after passage of the DSA, also potentially confusing. We did not intend to hold in
 
 Yates
 
 or
 
 Smith
 
 that a straight life sentence was subject to the provisions of the DSA. As noted, those cases did not involve sentencing.
 

 In deciding this question, we must look beyond
 
 Yates
 
 and
 
 Smith
 
 and consider whether a straight life sentence is determinate in the sense that it is subject to the DSA, section 1170 et seq. We believe our more recent cases, such as
 
 People
 
 v.
 
 Jefferson, supra,
 
 21 Cal.4th 86, which do involve sentencing and the DSA, correctly describe straight life sentences as indeterminate for this puipose. Court of Appeal opinions have also generally described a life sentence as indeterminate. (E.g.,
 
 People v. Reyes
 
 (1989) 212 Cal.App.3d 852, 856 [260 Cal.Rptr. 846];
 
 People
 
 v.
 
 Gallegos
 
 (1985) 170 Cal.App.3d 386, 389 [216 Cal.Rptr. 230];
 
 People
 
 v.
 
 Day
 
 (1981) 117 Cal.App.3d 932, 935-936 [173 Cal.Rptr. 9].) The drafters of the California Rules of Court also considered a life sentence indeterminate. California Rules of Court, rule 403, provides that the rules apply only to a “determinate sentence” under the DSA. The Advisory Committee Comment to that rule states, “The sentencing rules do not apply to offenses carrying a
 
 life term or other indeterminate sentences
 
 for which sentence is imposed under new section 1168.” (Advisory
 
 *659
 
 Com. com., 23 pt. 1 West's Ann. Codes, Rules (1996 ed.) foll. rule 403, p. 742, italics added.)
 

 A review of the relevant statutes shows that these cases and the comment are correct. Section 1170, subdivision (a)(1), makes clear that the DSA involves “determinate sentences.” Section 1170, subdivision (a)(3), states that the DSA does not “affect any provision of law that . . . expressly provides for imprisonment in the state prison for life,” thus demonstrating that such a sentence is
 
 not
 
 determinate. Moreover, both now and when defendant committed his crimes, section 669 provided that whenever a “life sentence” runs consecutively to a “determinate term,” the determinate term “shall be served first and no part thereof shall be credited toward the person’s eligibility for parole as calculated pursuant to Section 3046 or pursuant to any other section of law that establishes a minimum period of confinement under the life sentence before eligibility for parole.” Section 3046, in turn, provides, as relevant, “No prisoner imprisoned under a life sentence may be paroled until he or she has served at least seven calendar years or has served a term as established pursuant to any other section of law that establishes a minimum period of confinement under a life sentence before eligibility for parole, whichever is greater.” All of these statutes clearly show that a straight life sentence, as well as a sentence of some number of years to life, is
 
 not
 
 a determinate sentence within the meaning of the DSA.
 

 For these reasons, we conclude that both straight life sentences and sentences of some number of years to life are indeterminate sentences not subject to the DSA. Accordingly, the trial court correctly imposed full term enhancements for the straight life terms as well as for the 25-year-to-life term.
 

 III. Conclusion
 

 We reverse the judgment of the Court of Appeal and remand for proceedings consistent with this opinion.
 

 George, C. J., Mosk, J., Kennard, J., Baxter, J., Werdegar, J., and Brown, J., concurred.
 

 [1]
 

 A11 further statutory references are to the Penal Code unless otherwise indicated.
 

 [2]
 

 Both murder and attempted murder are “violent” felonies. (§ 667.5;-subd. (c)(1), (12).)
 

 [3]
 

 At the time of the crimes here, former section 669 provided: “Life sentences, whether with or without the possibility of parole, may be imposed to run consecutively with one another or with any other term of imprisonment for a felony conviction. Whenever a person is committed to prison on a life sentence which is ordered to run consecutive to any determinate term of imprisonment imposed pursuant to Section 1170, 1170.1, 667, 667.5, 667.6, 12022, 12022.2,
 
 *656
 

 12022.4,12022.5,
 
 12022.55, 12022.6, 12022.7, 12022.75, or 12022.9, the determinate term of imprisonment shall be served first . . . .” (Stats. 1992, ch. 133, § 1, p. 408, italics added.) Both versions affect defendant the same way, for both cover his section 12022.5 enhancements. As relevant to this case, the 1997 amendment merely simplified the language by referring genetically to all terms for “applicable enhancements” and “any other term of imprisonment” rather than listing the applicable statutes. Accordingly, for simplicity, we cite the current version in the text.